THE JOURNAL COMPANY, Respondent, vs. SIMON, Appellant.

*December 17, 1901 — January 7, 1902.*

*Contracts: Preventing performance: Appeal: Finding sustained.*

The question being whether defendant was entitled to recover upon an offer by plaintiff to give a certain sum to the person who would "bring about an investigation of the circulation of the evening newspapers of Milwaukee, said investigation to be conducted by an expert bookkeeper . . . and a representative of each newspaper," the evidence (stated in the opinion) is *held* to sustain a finding of the trial court that plaintiff did not fail to perform, but in good faith co-operated with the defendant to a reasonable extent to bring about such investigation, and that it was prevented by the refusal of two of the other newspapers to allow their circulation to be investigated pursuant to and in accordance with the terms of the offer.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This is an action to recover $725.80, with interest from May 10, 1899, claimed to be due to the plaintiff for advertising done in the plaintiff's newspaper for and on behalf of the defendant and at his special instance and request, between March 1, 1899, and May 10, 1899, inclusive, at an agreed price, according to the itemized statement annexed to the complaint and made a part thereof. The defendant answered by way of admissions and denials, and alleged by

way of counterclaim, in effect, that the defendant, being engaged in the dry goods business under the name of the "Boston Store," and an advertiser of such business in different journals and periodicals in Milwaukee, did, with one David Goodman, accept a proposition made and published by the plaintiff in its newspaper, January 5, 1899, in the words and figures following:

. " *The Journal Company* will give the sum of $500.00 in cash and a contract for $1,000.00 in advertising to the advertiser, advertising agent, or advertising agency *who will bring about an investigation of the circulation* of the evening newspapers of Milwaukee, said investigation to be conducted by an expert bookkeeper or bookkeepers, under bond (which *The Journal Company* will also furnish), and a representative from each newspaper."

It is then alleged that in pursuance of such offer the defendant and Goodman did bring "about an investigation of the circulation of the evening papers of Milwaukee;" that before doing so the defendant and Goodman entered into an agreement with the plaintiff that it would pay the defendant, for his work in bringing about such investigation, $250 in cash, and $500 in advertising, to be done in the newspaper published by the plaintiff; that the defendant did assist Goodman in bringing about such investigation in January, 1899, and thereupon the plaintiff became indebted to the defendant in the sum of $250 in cash, and for an order for $500 worth of advertising, but that no part thereof had been paid; and that the plaintiff was then indebted to the defendant in the sum of $750. Judgment was prayed against the plaintiff for that amount, besides costs.

The plaintiff replied by way of admitting that the plaintiff was a corporation engaged in publishing the Milwaukee Journal, and made and published the offer mentioned, and that the defendant was engaged in the business alleged, but otherwise denied each and every allegation contained in the counterclaim.

A trial by jury having been waived, and a trial of such issues having been had, the court, at the close of the trial, found as matters of fact, in effect, (1, 2) that the plaintiff, at the request of the defendant, did the advertising as alleged in the complaint, and that the same was reasonably worth $725.80; (3) that May 11, 1899, the defendant ceased to send his advertisements to the plaintiff, and discontinued advertising in the plaintiff's newspaper; (4) that January 5, 1899, the plaintiff published the offer alleged in the counterclaim and above set forth; (5) that the defendant, in cooperation with Goodman, pursuant to said offer, undertook or attempted to bring about an investigation of the circulation of the evening newspapers of Milwaukee, pursuant to and in accordance with the terms and conditions of said offer; (6) but that he did not, either by himself or in cooperation with Goodman or any other person, bring about an investigation of the circulation of the evening newspapers of Milwaukee, either in accordance with the terms of the offer or otherwise, and no investigation of the circulation of the evening newspapers of Milwaukee, or any of such newspapers, was ever brought about by the defendant, either by himself or in conjunction with any other person, pursuant to the terms and conditions of the offer so made by the plaintiff; (7) that the plaintiff did not prevent the bringing about of an investigation of the circulation of the evening newspapers of Milwaukee, pursuant to and in accordance with the terms and true meaning of its offer, and did not place any obstacle in the way of the defendant, either acting alone or in conjunction with any other person, from bringing about such investigation pursuant to and in accordance with the terms and true meaning of its offer; (8) that the plaintiff in good faith co-operated with the defendant and Goodman to a reasonable extent in their efforts, and in the efforts of each of them, to bring about an investigation of the circulation of the evening newspapers of Milwaukee,

pursuant to and in accordance with the terms of its offer; (9) that the Evening Wisconsin and the Milwaukee Daily News were two of the evening newspapers of Milwaukee which were contemplated and referred to in the offer of the plaintiff, and that the representatives of those two newspapers, respectively, refused to and would not consent to or allow the circulation of those two papers to be investigated in accordance with the reasonable meaning and interpretation of the offer so made by the plaintiff; (10) that the true reason why the defendant and Goodman did not succeed in bringing about an investigation of the circulation of the evening newspapers of Milwaukee, and the reason why such investigation was not in fact entered upon, was the refusal and unwillingness of the managers of the Evening Wisconsin and the Milwaukee Daily News to allow the respective circulations of such latter two newspapers to be investigated, pursuant to and in accordance with the terms of the offer so made by the plaintiff; (11) that the plaintiff made the offer in good faith, and was at all times ready and willing to proceed with an investigation of the circulation of the evening newspapers of Milwaukee, pursuant to and in accordance with its offer, and to co-operate with the defendant and Goodman to the end that an investigation of the circulation of the evening newspapers of Milwaukee might be accomplished and brought about in accordance with the reasonable interpretation and meaning of the terms of said offer; (12) that after March 1, 1899, and after it had become apparent that an investigation of the circulation of the evening newspapers of Milwaukee could not be brought about in accordance with the terms of the offer of the plaintiff, the plaintiff voluntarily offered to allow the defendant to advertise in the Saturday issues of the Milwaukee Journal to the amount of $100, free of charge; that the defendant accepted such offer, and within less than sixty days furnished copy for advertising in the Saturday issues of the Journal, which

was printed therein by the plaintiff, and amounted to $72, for which amount the defendant is entitled to credit on the plaintiff's claim, and upon furnishing copy to the amount of $28 the defendant is entitled to have the same printed in the Saturday issues of the Journal; (13) that each and all of the allegations of the answer and counterclaim of the defendant, except such as are expressly admitted by the complaint and reply, and except as thereinbefore otherwise found and determined, have not been proven and are not true.

And, as conclusions of law, the court found, in effect, that the plaintiff was entitled to judgment against the defendant for $653.80, with interest from May 10, 1899, with costs to be taxed, and ordered judgment to be entered accordingly.

From the judgment so entered the defendant appeals.

*N. S. Murphey*, for the appellant.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *J. G. Flanders*.

CASSODAY, C. J. It is conceded that the defendant and Goodman accepted the offer so made by the plaintiff, and did what they could to "bring about an investigation of the circulation of the evening newspapers of Milwaukee," as prescribed in the offer. To be successful, it was not only necessary for the plaintiff to co-operate with them, and do the things which it had therein proposed to do, but it was equally necessary for them to secure the co-operation of the other four "evening newspapers of Milwaukee." Accordingly, and about the time of such offer, they did secure from each of those newspapers an agreement in writing "to have an investigation of the circulation of" its "paper by an expert bookkeeper or bookkeepers, at once or during the next thirty days, before a representative of each evening newspaper of Milwaukee, for the purpose of a comparison as per

notice in the Milwaukee Journal," for such "benefit or bene-
fits as the Columbia Clothing Company " might derive there-
from. Such agreements were substantially alike, except that
one made no reference to the Clothing Company, nor to the
Journal or the notice therein. Thereupon the defendant
and Goodman met with the representatives of the five even-
ing newspapers on a half dozen different occasions, appar-
ently for the purpose of co-operating together and to agree
upon some plan for conducting such investigation. At each
of those meetings a stenographer was present and took down
what was said and done.

The second meeting was held January 7, 1899. The third
meeting was held January 12, 1899, when there was an agree-
ment as to employing a stenographer. At that meeting one
of the other four evening papers was apparently dropped out
by consent of all. At that meeting there was some discussion
as to when the plaintiff should pay the defendant and Good-
man, and give them a due-bill for advertising or deposit
money, and some controversy as to the mode of procedure.
The next meeting was January 30, 1899. At that meeting
it was proposed that the representatives of the three other
papers should meet and draw up a mode of procedure, and
present it at a subsequent meeting, to which the plaintiff's
representative stated that the Journal would abide by their
decision if it was according to its offer, and that free access
would be given to the plaintiff's office for the purpose of
making an examination. The next meeting was February
6, 1899. The plaintiff's representative was not present. The
subcommittee, consisting of three representatives — one from
the Wisconsin, the Germania, and the News, respectively,
presented a report, covering seven printed pages, as to what
the investigation should cover, the method of procedure, a
penalty for counting what ought not be counted, the expense
of such investigation, the extent of time to be covered by
such investigation, the representation of each paper engaged

Journal Co. v. Simon, 112 Wis. 548.

in such investigation, and the prices of each of the four papers as therein stated.

The next meeting was February 8, 1899. After considerable discussion and wrangling as to whether the plaintiff should submit to such report, and as to who should act as chairman of such meeting, it was finally agreed that a gentleman connected with an outside paper should be called in and act as chairman. After the chairman so chosen appeared, and after considerable wrangling, as characterized by such chairman, the plaintiff's representative was finally allowed to state his objections to such report, which covered a number of matters outside of the plaintiff's offer. Among such objections were some to the effect following: The requirement that the examination should be by sworn affidavit at all points; as to the right of the committee or anybody else to say what price the plaintiff should sell its paper for; and that if it had discounted to any number of readers, as it had to clergymen, then it must pay a fine of $2 for each such subscriber; as to the method prescribed for paying the expense of the investigation, instead of leaving each paper to pay the expense of its own investigation; as to the schedule of rates, whereby the report prescribed what the plaintiff should charge; as to the period of time to be covered by the investigation; and insisted that April should be included with any month the committee might name. In stating such objections, the representative of the plaintiff stated that they were made to what he regarded as an "unfair proposition," but that it had nothing to do with the plaintiff's offer; that he should "not waver from" the plaintiff's "original standpoint, so far as that goes;" that he would "be investigated just the way" the plaintiff had agreed to, but would not "investigate according to the views of the majority;" that he would not consent to have the plaintiff's offer lumbered up with conditions. After a lengthy discussion, and at the suggestion of the chairman, the report was

modified to the extent of only requiring affidavits "wher-
ever they were obtainable." To that the plaintiff's repre-
sentative waived any objection, and also waived any objec-
tion to putting up a check for $250. The report was modified
so as to drop out the fine for discounts. At the suggestion
of the chairman, the plaintiff's representative expressed a
willingness to consent to so much of the report as related
to prices, provided the investigation of the circulation should
"show exactly what is being paid for each paper, and be
classified just exactly and show just exactly what " was re-
ceived for each paper; but all the other papers were against
such modification. The plaintiff's representative then waived
his objection to the expense of investigation. He also waived
any objection to having the investigation cover sixty days
back from the day the investigation should begin, but in-
sisted that it should include April by reason of an under
standing or agreement with the advertisers,— the defendant
and Goodman,— and would waive that if they would con-
sent. It was finally agreed unanimously that such investi-
gation should cover the months of December and January.
The other three papers voted against such modification of
the report. A motion was then carried by a vote of all
three other papers, against the vote of the plaintiff, that
each of the four papers should put up $250 in currency into
the hands of the chairman, as a guaranty that they would
go on with the investigation in accordance with the rules
laid down by the committee. Such objection on the part of
the plaintiff was made upon the ground that under the ar-
rangement its paper was first to be investigated.

Another meeting was held February 28, 1899, at which
one of the other three papers objected to the period cov-
ered by the investigation being December and January,
and it was finally agreed by all that the investigation should
cover the two months prior to the date of the commence-
ment of the investigation of the circulation of the first

paper, and they unanimously resolved that each should put up the $250 in currency, as indicated, before Wednesday, March 1, 1899. Then followed a long discussion as to whether the investigation should be limited to and only show full-paid circulation, or all circulation that was paid for. The plaintiff's representative consented that the offer might be limited to full-paid circulation, but insisted, as he had all the way through, that the report should show all circulation that was paid for; and the defendant stated that "the report should show the complete circulation, even though some of it is at a cut rate," and Mr. Goodman made a similar statement. The Germania consented to the same thing, but the other two papers objected, and no agreement as to that point was ever reached.

Such is a brief summary of the discussion which covers over 140 pages of the printed case. There is no pretense that the defendant can recover, unless the plaintiff has failed to perform according to its offer as alleged in the counter-claim. By the terms of the offer, the investigation was to be conducted by an expert bookkeeper or bookkeepers, under bond to be furnished by the plaintiff, and a representative from each of the evening papers was to participate, and the plaintiff was to pay the persons described in case they should " bring about an investigation of the circulation of the evening newspapers of Milwaukee." The offer being voluntary on the part of the plaintiff, it was at liberty in making the same to impose such conditions as it saw fit. To recover, it was essential for the defendant to show a substantial compliance with the terms of the offer. *Thatcher v. England,* 3 C. B. 254; *S. C.* 54 Eng. C. L. 254; *Jones v. Phœnix Bank,* 8 N. Y. 228, 233; *Fitch v. Snedaker,* 38 N. Y. 250; *Besse v. Dyer,* 9 Allen, 151; *S. C.* 85 Am. Dec. 747, and note; *Blain v. Pacific E. Co.* 69 Tex. 75; *Kasling v. Morris,* 71 Tex. 584; *S. C.* 11 L. R. A. 399. There is no pretense that any such investigation has ever

taken place. This being so, there can be no ground for recovery, unless such investigation was prevented by failure of the plaintiff to perform the contract on its part. As indicated, the court found that the plaintiff did not fail to perform but in good faith co-operated with the defendant and Goodman to a reasonable extent to bring about such investigation, and that such investigation was prevented by the refusal of two of the newspapers, named in the findings, to allow their respective circulation to be investigated pursuant to and in accordance with the terms of the offer. Such findings appear to be supported by the undisputed evidence. Certainly, there is no ground for saying that they are contrary to the clear preponderance of the evidence. The controversy between the parties seems to have been largely as to whether the proposed investigation should be brought about as prescribed in the plaintiff's offer, or, as stated by the representative of one of the evening papers, " *according to the views of the majority of the gentlemen* " representing the different papers. The plaintiff insisted upon its legal right to make its own contract. It did, however, as we have seen consent to some modifications. It was contended that it should have consented to other modifications, which it refused to do; and it had the legal right to so refuse. We perceive no error in the record.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.